UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

LEOBARDO MUNOZ and
MARIA ELENA MUNOZ,

Case no. 16-10343-ta13

Debtors.

# OPINION

Before the Court is Debtors' motion to assume their buyers' interest in a real estate contract on an unimproved lot in Rio Rancho, New Mexico. The lot owner objects, arguing, among other things, that he did not get notice of the motion timely. The history of this matter is convoluted, involving three bankruptcy cases, three different debtors' counsel, and two owners of the lot. After conducting a final hearing on the motion and reading the documents filed in the three bankruptcy cases, the Court concludes that Debtors' motion to assume must be denied, without prejudice to their right to seek to re-establish ownership of the contract rights and file a new motion.

I.  FACTS[1]

The Court finds:

In July 1998 Debtors signed a real estate contract (the "REC") with the Wright Family Trust (the "Trust")[2] to buy an undeveloped lot in Rio Rancho, New Mexico (the "Lot"). Debtors agreed to pay $15,000 for the Lot in monthly installments $144.76. Interest accrued on the unpaid balance at 10% per year. Had Debtors made all payments timely they would have paid off the REC

---

[1] The Court takes judicial notice of the docket in this case and in Debtors' two prior bankruptcy cases. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).
[2] At the time, Kenneth M. Wright and Gladys Wright were the trustees.

in 20 years at a total cost of $34,742.40. The parties appointed American Escrow to administer the contract.

Debtors filed a chapter 7 bankruptcy case in this district in September 2008, no. 08-13101-m7. They received a discharge on January 5, 2009. They did not list the REC in their bankruptcy schedules, nor did they list the Trust as a creditor. Their Schedule J did not include the monthly REC payment as an expense.

Kenneth Wright died in 2010; Gladys in 2012. Thereafter, Gerard Greiner became the trustee of the Trust while Charles Wright and Brian Hoile became the sole beneficiaries.

Debtors filed a chapter 13 case in this district in March 2013, no. 13-10930-t13. Unlike their 2008 case, in 2013 Debtors scheduled their interest in the REC and valued the Lot at $5,000. Debtors listed "Ken and Gladys Wright Trustees" as secured creditors.

Debtors filed a chapter 13 plan in April 2013. The plan treated the REC as a secured claim to be paid without modification "outside" the plan. The REC was not among the executory contracts to be assumed. In December 2013, however, Debtors filed a motion to assume the REC.[3]

Debtors' plan was confirmed December 31, 2013, and a default order granting the motion to assume the REC was entered January 7, 2014. On June 8, 2015, however, Debtors dismissed their chapter 13 case, stating that they "no longer wish to be debtors in Chapter 13."

Debtors filed this chapter 13 case about eight months later. Debtors listed the Lot on Schedule A, listed the REC on Schedule G, and listed the Trust as a secured creditor on Schedule D. Debtors' creditor mailing list included:

> Kenneth M. Wright and Gladys Wright
> 520 Farm Hill Drive
> Georgetown, TX, 78633

---

[3] At the time, chapter 13 debtors in this district were not allowed to file "combo" plans that included motions, such as a motion to assume an executory contract.

-2-
Case 16-10343-t13    Doc 191    Filed 12/04/19    Entered 12/04/19 14:15:26 Page 2 of 12

Ken & Gladys Wright Trustees
P.O. Box 40224
Santa Fe, NM, 87501-4224.

American Escrow
2717 San Mateo NE
Albuquerque, NM 87110-3143

The Wrights once lived at the Georgetown, Texas address, but had moved, and then died, before the case was filed. The second address is an amalgam of Mr. Griener's post office box in Reno, Nevada and the city and state where Mary Wilson, the Trust's New Mexico counsel, lives. It is clearly erroneous. American Escrow's address is accurate.

In their chapter 13 plan Debtors proposed bifurcate the Trust's claim into a $5,000 secured and a $2,800 unsecured claim. The plan also proposed to assume the REC by separate motion.

The notice of the bankruptcy case, plan, and notice of the deadline to object to the plan were mailed by the Bankruptcy Noticing Center to all listed creditors on February 21, 2016.

On March 4, 2016, Debtors filed a motion to value the Lot for $5,000. The motion and a notice of objection deadline were mailed to Kenneth and Gladys Wright at the Georgetown, Texas address. On the same day Debtors also filed a motion to assume the REC. The motion and a notice of deadline to object were mailed to American Escrow at its listed address.

The chapter 13 trustee timely objected to the motion to assume, arguing that the REC is "a burden on the debtor and reduces available disposable income as the real property which is the subject of the contract is not the debtors' residence and this is merely an investment property." Debtors never set the matter for a hearing so the Court never ruled on the motion to assume.

No objections were filed to the motion to value the Lot. A default order granting the motion was entered April 1, 2016.

On June 27, 2016, the Court confirmed the chapter 13 plan.

-3-

By a quitclaim deed signed December 21, 2017, Mr. Greiner conveyed the Lot from the Trust to Charles Wright and Brian Hoile as tenants in common.[4] Around this time, Wright learned that Debtors had not made a payment on the REC since 2013. Wright sought to terminate the REC based on the Debtors' default but learned from American Escrow that Debtors had filed this case.

On August 29, 2019, the Court held a status conference and a preliminary hearing on Debtors' motion to assume, and Wright's concerns about lack of notice. At the hearing, the Court ordered Wright to submit a motion stating with particularity the relief that he sought and the grounds therefor. Wright timely filed a motion seeking to determine the value of the Lot, objecting to the motion to assume, and seeking an order "releasing" the Lot to him. On October 9, 2019, the Court held a final hearing on Wright's motion and on the Debtors' motion to assume.

Renee Maestas is a manager at American Escrow, where she has worked for 33 years. She testified that American Escrow's policy is to mail to the seller any bankruptcy-related documents it receives from the buyer's bankruptcy. In preparing to testify, Ms. Maestas reviewed American Escrow's file. The file included a notation that in 2013 American Escrow sent notice of Debtor's 2013 bankruptcy case to Mr. Greiner at his Reno, Nevada, address.[5] Ms. Maestas did not know whether Mr. Greiner was American Escrow's point of contact in 2016, nor did she know whether notices related to Debtors' 2016 bankruptcy case were sent to Mr. Greiner or someone else. Ms. Maestas testified, however, that American Escrow's policy was to send any documents from a buyer's bankruptcy to the person listed as the seller's point of contact in the file.

Wright testified that Mr. Greiner's practice was to send Ms. Wilson all Trust-related documents he received. In turn, Ms. Wilson's practice was to forward everything she received to

---

[4] Messrs. Wright and Hoile thereupon succeeded to the Trust's position in this bankruptcy case.
[5] One of Debtors' exhibits showed that in 2013 Mr. Greiner (at his Nevada address) was listed in the "seller fields" of American Escrow's file as the agent of (and point of contact for) the Trust.

-4-
Case 16-10343-t13    Doc 191    Filed 12/04/19    Entered 12/04/19 14:15:26 Page 4 of 12

Wright. Wright testified that he never received notice of Debtors' 2016 bankruptcy case from Ms. Wilson or anyone else. From this, Wright concluded that Mr. Greiner did not receive any documents related to Debtors' 2016 bankruptcy case.

Based on the evidence before it, the Court cannot find that the Trust received actual notice of Debtors' 2016 bankruptcy case, the chapter 13 plan, notice of the deadline to object to the plan, the motions, or the deadlines to object to the motions. While Ms. Maestas credibly testified that American Escrow forwarded notice of Debtors' 2013 bankruptcy case to Mr. Greiner, her testimony regarding American Escrow's handling of the documents from Debtors' 2016 bankruptcy case was much less specific. Ms. Maestas' certainty about the 2013 notice stemmed from a notation in the file that the notice had been sent to Mr. Greiner. Apparently, there was no similar notation about Debtors' 2016 bankruptcy. On balance, Ms. Maestas' testimony regarding the 2016 notice is too tenuous to support a finding that the Trust received actual notice of the 2016 case, the chapter 13 plan, or the motions.

II.  DISCUSSION

A.  The REC is an Executory Contract.

The rule in this district is that real estate contracts are "executory contracts" subject to § 365.[6] *Shaw v. Dawson*, 48 B.R. 857, 860 (D.N.M. 1985); *see also In re Texas Reds, Inc.*, 2010 WL 398918, at *1, n.1 (Bankr. D.N.M.) (citing *Shaw*); *In re Bellamah Community Development*, 107 B.R. 337, 341 (Bankr. D.N.M. 1989) (citing and following *Shaw*).[7]

---

[6] Unless otherwise specified, statutory references are to 11 U.S.C.
[7] Nationally, there is a split in the case law on whether real estate contracts should be treated as executory contracts or security devices. *See, e.g.*, *In re Heward Bros.*, 210 B.R. 475, 477-78 (Bankr. D. Id. 1997) (discussing the split); *Kane v. Town of Harpswell (In re Kane)*, 248 B.R. 216, 223 (1st Cir. BAP 2000) (same); *In re Gochenaur*, 1995 WL 465332, at *2 (Bankr. M.D. Pa.) (collecting cases). The Tenth Circuit has not ruled on the issue. There is force to the argument that not every real estate contract is executory. Here, however, the parties did not challenge *Shaw* nor

On filing a bankruptcy case, all the debtor's legal and equitable interests in property become property of the estate. § 541(a)(1). This includes the debtor's interests in executory contracts. *In re Yelverton*, 2015 WL 4761193, at *1 n.2 (Bankr. D.D.C.). The debtor has an affirmative obligation to schedule all executory contracts. BR[8] 1007(b)(1)(C); *see generally In re JZ, LLC*, 357 B.R. 816, 822 (Bankr. D. Id. 2006) ("every debtor has 'a duty to prepare schedules carefully, completely, and accurately.'").

Assumption and rejection of executory contracts is governed by § 365. Rejection of an executory contract constitutes a breach of the contract as of the petition date. § 365(g)(1).

The terms of an executory contract cannot be modified by the debtor or the court; the contract must be assumed *cum onere*. *In re Beverage Canners Intern. Corp.*, 255 B.R. 89, 95 (Bankr. S.D. Fla. 2000) (contract must be assumed in its entirety or completely rejected); *In re Bellamah Cmty. Dev.*, 107 B.R. at 339 (no modification of the terms is allowed without agreement of the contracting parties); *In re McDaniel*, 89 B.R. 861, 863 (Bankr. E.D. Wash. 1988) (same); *In re Booth*, 19 B.R. 53, 58 (Bankr. D. Utah. 1982) (same).

While the exchange consideration value in an executory contract may be relevant to the advisability of assumption, *see, e.g., In re Riodizio, Inc.*, 204 B.R. 417, 424-25 (Bankr. S.D.N.Y. 1997), debtors may not "write down" a real estate contract to the value of the subject property. *In re Bellamah Cmty. Dev.*, 107 B.R. at 339.

B.   In Chapter 13, Debtors Usually Exercise § 365 Assumption/Rejection Rights.

---

provide evidence upon which the Court could weigh whether the REC was executory. The Court therefore will apply *Shaw* in this case.
[8] "BR" means a Federal Rule of Bankruptcy Procedure.

Section 365 applies in chapter 13 cases. There is a lack of clarity in the Code whether the chapter 13 trustee or the debtor, or both, may seek to assume executory contracts. On the one hand, § 365(d)(2) provides:

> In a case under chapter 9, 11, 12, or 13 of this title, the *trustee* may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on request of any party to such contract or lease, may order the *trustee* to determine within a specified period of time whether to assume or reject such contract or lease.

(emphasis added). Although § 1107 makes clear that, in Chapter 11 cases, the debtor in possession may exercise the rights of a trustee under § 365, there is no similar provision in Chapter 13. However, § 1322(b)(7) provides:

> (b) . . . the plan may—
>   (7) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section.

As plan confirmation is the *raison d'être* of chapter 13, most courts view debtors as the logical party to file § 365 motions. *See, e.g., In re Wallace*, 122 B.R. 222, 234 (D.N.J. 1990) (in a chapter 13 case, the court substituted "debtor" for "trustee" when construing § 365); *In re Warne*, 2011 WL 1303425, at *7 (Bankr. D. Kan.) (chapter 13 debtor rather than trustee is the proper party to be given a deadline for electing whether to assume or reject an executory contact). While the trustee has standing to file § 365 motions, her role typically is to review debtors' § 365 motions and object when indicated (as was done here).

C.   <u>The Motions Were Not Properly Served</u>.

The motions to value and to assume commenced contested matters pursuant to BR 9014. *See* BR 3012(b) and 6006(a). As such, Debtors were required to serve the Trust with copies of the motions and notices of deadlines to object. BR 7004 and 9014. The Bankruptcy Rules allow service by mail. BR 7004(b). To properly serve the motions and notices by mail, Debtors were required to

mail them via first class mail to the trustee (Mr. Greiner) at his correct address. BR 7004(b)(3). Instead, the motion to value was mailed to the wrong person at the wrong address. Likewise, the motion to assume was mailed to American Escrow rather than Mr. Greiner. American Escrow was not the Trust's agent for service of process.[9]

Service of process "serves two purposes: notifying a defendant of the commencement of an action against him and providing a ritual that marks the court's assertion of jurisdiction over the lawsuit." *Okla. Radio Assocs. v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992). Adequate notice is required by the due process clause of the 14th Amendment to the Constitution. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Personal jurisdiction is essential for the Court to bind the parties to any order or judgment. *See Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008) (a default judgment entered without proper service of process is void for lack of jurisdiction); *In re Moreno*, 2012 WL 5614089, at * 2 (Bankr. D.N.M.) (same).

As determined above, the Trust did not receive actual notice of the motions. Thus, the first purpose of service of process, i.e., affording the Trust due process, was not met.

Second, the faulty service meant that the Court never obtained personal jurisdiction over the Trust. *See Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) (more than notice is required to exercise personal jurisdiction over a defendant; the procedural

---

[9] An escrow agent in a real estate contract is not an "agent" for the buyer or the seller. *See* Restatement (Second) of Agency, § 8.09 cmt. D ("[A]n escrow holder is not an agent as defined in § 1.01 because the escrow holder does not assent to acting subject to the control of the parties to the escrow contract. An escrow holder, although often termed an 'escrow agent,' is more precisely comparable to a holder of a power given as security for the benefit of a third party[.]"); *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1342 (11th Cir. 2000) ("administration of escrow funds . . . , without more, does not create an agency relationship"); *Fasciana v. Electronic Data Sys. Corp.*, 829 A.2d 160, 173 n.44 (Del. Ch. 2003) ("Notwithstanding the use of the term 'escrow agent' it is clearly established that an escrow holder is not . . . an agent of either party").

requirement of service of summons must be satisfied); *Bethley v. City of Spencer, Okla.*, 37 F.3d 1509, *4 (10th Cir. 1994) (actual notice notwithstanding, the court lacked jurisdiction over a defendant who had not been properly served); *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984) (same); *Mid-Continent Wood Prods. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991) (defendant's actual notice of the litigation is insufficient to give the court personal jurisdiction over him).

As the motions were not properly served on the Trust and no actual notice given, the motion to value does not bind Wright, nor does the deadline to object to the motion to assume.[10]

D.    The Trust Did Not Receive Actual Notice of the Bankruptcy Case or the Chapter 13 Plan.

Similarly, the Court finds that the Trust did not receive actual notice of Debtors' 2016 chapter 13 case and plan. The confirmed plan, therefore, does not bind Wright as the successor to the Trust. *See In re Linkous*, 990 F.2d 160, 162 (4th Cir. 1993) (a confirmed plan was not binding on secured creditors who did not receive adequate notice of a valuation hearing affecting their claims); *In re Greer*, 498 B.R. 98, 111 (S.D. Miss. 2013) (a plan did not bind a creditor who did not receive timely or proper notice); *In re Richter*, 525 B.R. 735, 750-51 (Bankr. C.D. Cal. 2015) (to the same effect); *In re Chang*, 274 B.R. 295, 302 (Bankr. D. Mass. 2002) (same).

E.    The REC Remains Property of The 2008 Bankruptcy Estate.

When Debtors filed their chapter 7 case in 2008, they were required to disclose all of their executory contracts, including the REC. § 521; BR 1007; Official Form 6G. Debtors did not schedule their interest in the REC. Instead, they stated that they had no executory contracts. The omission notwithstanding, their interest in the REC became property of the bankruptcy estate.

---

[10] Furthermore, the motion to value is irrelevant because the REC is an executory contract.

§ 541(a)(1); *see also In re Yelverton*, 2015 WL 4761193, at *1, n.2 (Bankr. D.D.C.) (on the petition date executory contracts become estate property).

Property of the estate that is neither abandoned nor administered remains estate property after the case has been closed. § 554(a), (c), (d). "That includes unscheduled or 'omitted' assets." *Franco v. Franco (In re Franco)*, 574 B.R. 730, 735 (Bankr. D.N.M. 2017); *In re Kopp*, 374 B.R. 842, 846-47 (D. Kan. 2007) ("An unscheduled asset is not abandoned by the trustee when the case closes. Property not [affirmatively] abandoned under § 554 and unscheduled property not administered remains property of the estate."); *In re Michael Allen Holley*, __ B.R. __, 2019 WL 4934856, at *3 (Bankr. D.N.M.) (collecting cases).

Where a chapter 7 trustee does not assume or reject an executory contract within 60 days of the order for relief, the contract is deemed rejected. § 365(d)(1). There is a split in the case law about whether this rule applies to undisclosed executory contracts. Compare *Strohbeck v. Zuniga (In re Zuniga)*, 287 B.R. 201, 206 (Bankr. E.D. Mo. 2001) ("[a] trustee cannot be deemed to have rejected a contract of which he was not aware and which was not listed in the debtor's schedules"); *Medley v. Dish Network, LLC*, 2018 WL 4092120, at *5 (M.D. Fla.) (quoting *Zuniga*); and *In re Weathers*, 465 B.R. 782, 784 (Bankr. N.D. Miss. 2011) (citing and quoting *Zuniga*), with *RPD Holdings, LLC v. Tech Pharmacy Services* (*In re Provider Meds, LLC*), 907 F.3d 845, 857 (5th Cir. 2018) ("section 365(d)(1) does not impose an actual or constructive notice requirement for

when the sixty-day deadline applies"); and *Bell v. Herrera (In re Bell)*, 2019 WL 494109, at *2 (Bankr. M.D. Pa.) (citing and following *Provider Meds*).[11]

Whichever rule applies, the Court holds that Debtors' interest in the REC remains property of the 2008 bankruptcy estate. While some cases hold that contract rejection effects an abandonment, *see, e.g., Stolz v. Brattleboro Housing Authority (In re Stolz)*, 315 F.3d 80, 85, n.1 (2d Cir. 2002); this case law can be traced to the Bankruptcy Act concept that rejected executory contracts never become estate property. *See, e.g., Cheadle v. Appleatchee Riders Assn.* (*In re Lovitt)*, 757 F.2d 1035, 1041 (9th Cir. 1985) (in a Bankruptcy Act case the court held that "executory contracts and leases . . . vest only upon the trustee's timely and affirmative act of assumption").

Rather than simply equating rejection with abandonment, Judge Bernstein analyzed the legal effect of rejection more carefully in *In re Touloumis*:

> A residential lease, while theoretically an asset of the estate, is not one that a Chapter 7 trustee will generally assume and assign. In fact, the trustee in this case filed his Report of No Distribution on July 5, 1994, and hence, will not "administer" this or any other asset. *Whether he formally abandons the lease, or simply closes the case without administering it*, the lease will revert to the Debtor. *See* 11 U.S.C. § 554.

170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994) (emphasis added). Following *Touloumis*, the Court holds that a § 365(d)(1) rejection of an undisclosed executory contract does not effect an

---

[11]Some courts have held that the chapter 7 trustee has an affirmative duty to investigate whether there are unscheduled executory contracts. *See, e.g., Affordable Efficiencies, Inc. v. Bane (In re Bane)*, 228 B.R. 835, 840 (W.D. Va. 1998); *Hoffman v. Vecchitto (In re Vecchitto)*, 235 B.R. 231, 236 (Bankr. D. Conn. 1999). The Court rejects this view. It is unreasonable to expect case trustees to search for undisclosed executory contracts or unexpired leases. *See, e.g., Gennet v. Docktor (In re Levy)*, 185 B.R. 378, 386 (Bankr. S.D. Fla. 1995) (unrealistic to expect a bankruptcy trustee to conduct a title search); *Moratzka v. Estate of Pomaville (In re Pomaville)*, 190 B.R. 632, 637 (Bankr. D. Minn. 1995) (to the same effect).

abandonment. Moreover, unless a § 554(a) motion is filed and granted, rejection of a disclosed executory contract does not result in abandonment until the case is closed.

Debtors' undisclosed rights under the REC may or may not have been rejected pursuant to § 365(d)(1), but they were never administered by the 2008 case trustee and remain property of the 2008 estate. Thus, Debtors have no REC rights to assume in this case. If Debtors wish to assume the REC they must first reopen the 2008 case, amend their schedules, and seek abandonment of the REC. If successful, they can then file a motion to assume the REC in this case. Such a motion would have to include a proposal for "promptly" curing all defaults. *See* § 365(b)(1)(A).

### III. CONCLUSION

Debtors did not disclose the REC in their 2008 bankruptcy case; did not properly serve the motions to assume and to value; and did not give proper notice to the Trust of the bankruptcy case or plan. One result is that Debtors cannot assume the REC. If they gain that ability hereafter they may file a new motion to assume and serve it on Wright, at which point the Court will take up the matter. The Court will enter separate orders consistent with the foregoing.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 4, 2019

Copies to:   Electronic notice recipients

   Charles Wright
   308 Washington NE
   Albuquerque, N.M. 87108